3170567 Stephen Stimeling, Appellant by Shane Boyles v. Peoria Public School District 150, Appellee by Bhatlak Bhaktiari Mr. Boyles Thank you. Thank you for granting oral arguments. I know it's sort of routine here, but other districts don't necessarily do that, so thank you. May it please the Court. In this case, there are two statutes before the Court. The Public Employee Disability Act, or PEDA, and the Public Safety Employee Benefits Act, or PCEBA. Both statutes use the term law enforcement officer, but neither statute defines it. The PEDA, the Public Employee Disability Act, has stringent higher burden for the plaintiff to meet than the PCEBA. And under the PEDA, the plaintiff must demonstrate that they are a law enforcement officer, employed on a full-time basis, working for a public entity with the lawful authority to employ persons for such purposes. The PCEBA simply requires a law enforcement officer, and presumably a public employer. It never really says that in the Act, but it is called the Public Safety Employee Benefits Act. The PEDA, this was explained in the Gibbs decision, Gibbs is 760 any second, 1049. The PEDA does not define the term law enforcement officer. PCEBA only defines the term firefighter, and that definition expressly includes EMTs, but firefighter is not defined in the PEDA either. Of the two statutes, only one, you know, firefighter and law enforcement officer is only defined in one place, and it's in the PCEBA. The Gibbs court, this was a fifth district decision, the Gibbs court did not equate law enforcement officer with a city police officer. Instead, it considered the purposes or the functions of the officer, of the correctional officer in that case, and that is what the law states. That's at the very end of Section 1A of the PEDA. And when comparing the purposes of county correctional officers and local city police officers, the fifth district concluded that the purposes were similar enough that the correctional officers were law enforcement officers under the PEDA, and that's really the issue before the court. Steven Steinwing, a law enforcement officer under the PEDA, and from our point of view, if he was a law enforcement officer under the PEDA, he was also a law enforcement officer under the PCEBA. And that is what the plaintiff is asking this honorable court to do. We're asking the court to consider the functions, to look at the statute for truant officers, and consider whether or not the functions that are spelled out in that Illinois statute describe a law enforcement officer. Now, the plaintiff is also arguing that he was a police officer. He was certified by four different jurisdictions. Besides the defendant, he was certified by three other jurisdictions to the Illinois Law Enforcement Training Standards Board. So we're also arguing that because he was, in fact, certified, that we're not relying on the certification from the defendant being the one that necessarily controls you. Independently from and in addition to, he was certified as a police officer when he was hired, not when he was hired, but while he was working for the defendant, and they knew it. But doesn't he have to get injured in a certified position for that argument to hold water? In other words, while he's working for one of these agencies? I think under the PCEBA, that's definitely true. I think they call it catastrophic injury in the line of duty. I think both of them use the phrase in the line of duty. And I think the duties, again, I think it's the duties that matter. What duties was the person performing at the time? Certification is just what we had tried to use to demonstrate that he was, in fact, a law enforcement officer. But neither statute mentions certification. Well, but under PETA, it provides that the employer must possess legal authority to hire the employee to perform all the qualifying job. Right? It talks about the employer's authority also. The employer's lawful authority, I know, is mentioned at the end of 1A. I don't know that it's mentioned elsewhere in the statute, but that could just be my mistake. 1A. And did the Peoria Public Schools have the legal authority to hire a police officer? I guess they could hire a police officer, but could in essence have their own police department. It's unsettled. It's questionable. It's unsettled. The Law Enforcement Training Standards Board said, we don't think you can send a letter to the Peoria Public School District, and the Peoria Public School District didn't take the issue any further. They just decided to back off. It's never been answered. At various points in this litigation, that letter from Anna Trenian at the Law Enforcement Training Standards Board was treated as authoritative, which I don't necessarily believe it is. But that's an open question. It's an open issue. From our point of view, if you want to take that further, the question is, is a truant officer a law enforcement officer? And based upon the statutory definition of a truant officer, we believe they meet that definition, at least for purposes of the PETA. A law enforcement officer doesn't necessarily have to be a city police officer. That's what the Gibbs decision states. And the definition of a truant officer starts off very specifically. It says, the truant officer shall be responsible primarily for enforcing the truancy laws. And that's enough from our point of view. If a law enforcement officer is an officer that's supposed to enforce the laws, the truancy statute says the truant officer shall enforce the truancy laws. But the truant officer statute also goes further. It also very broadly defines the scope of authority of a truant officer and gives them more or less traditional police powers, but it confines it geographically to the school district. So even if that is required, and we understand that's in 1A, and that's sort of the back door to the ultra-buyers argument, it's all the same argument, you know, what's the lawful authority of the employer? We believe the truant officer statute, there's enough there, if the Gibbs analysis is followed, to say that this person is a law enforcement officer for purposes of the PETA. And by way of example, if you compare it to a bailiff, you know, a bailiff is not necessarily a police officer. It's not necessarily the same thing, but is a bailiff a law enforcement officer? And if you're in a courtroom long enough, at some point, probably we'll see a bailiff have to take some sort of action to either enforce the criminal laws or to deal with an emergency. And then what happens is the bailiff is injured. But if the employer says the bailiff is injured so badly, they can no longer perform their jobs, which is what happened here. Is the bailiff a law enforcement officer? Aren't bailiffs usually hired by the county? Yes, but for example... The county clearly has authority to maintain a police force. That's correct, that's correct. But the Gibbs court looked at the duties of the correctional officer. It was a correctional officer who was also a sheriff's deputy in Gibbs. So it's sort of a similar situation. But the school board definitely has, actually is required, somebody is required, either the county or the school board, to have at least one truant officer. And it starts with shall. Shall be a truant officer. And then repeated talks about the lawful authority of the employer. Do they have the authority to employ law enforcement officers? Well, they definitely have the authority to employ truant officers. No question about it. So the question is, is a truant officer a law enforcement officer? The statute doesn't require them to be a police officer in the traditional sense. And what I was referring to with the ultra-virus, there's this ultra-virus issue and whether or not the plaintiff has waived the collateral estoppel argument. That's all the same question. It's all the same issue. The PETA says the lawful authority of the employer is at issue. So the ultra-virus defense, for lack of a better term, is just another way to get into that same house, whether it's the front door or the back door. It's all the same issue. The lawful authority of the employer is at issue under Section 1A of the PETA. So there's an argument about whether or not we waive our ability to respond to that and how it's treated in terms of an ultra-virus argument or however it's termed. But from our point of view, it's all the same issue and it's always been an issue in this case. Again, from what we see, the PESIVA is less demanding than the PETA. It requires only that the plaintiff, the officer be a law enforcement officer employed by a public employer. It's not clear that the lawful authority of the employer is even relevant under the PESIVA. But even if it is a defense, from our point of view, the analysis isn't qualitatively different under one statute or the other. There's some other cases that talk about a finding for workers' compensation purposes pretty much settles an issue for PESIVA purposes and that sort of thing. I know there's an axiom or a rule of construction that says when a statute touches on a certain area, it's supposed to be... Various statutes that deal with the same subject matter should be construed consistently with one another. So from our point of view, there's not really a different analysis under the PESIVA as compared to the PETA. The plaintiff was a certified police officer. And he was working for district, the defendant. We think that meets the literal requirements of the PETA statute. But even if it doesn't, we think that his other status as a truant officer satisfies the lawful authority requirement of the employer. And there's enough there in the truancy statute which talks about being conservators of the peace, shall keep the same, suppress riots, riots, fray, fighting, breaches of the peace, and prevent crime, and may arrest offenders on view and cause them to be brought before proper officials for trial or examination. That's the truancy statute. So from my point of view, if the court is uncomfortable with whether or not the certification of him as a full-blown police officer by other jurisdictions satisfies, we think there's still enough there under the truancy laws that he is a law enforcement officer for purposes of the PETA and there's no question about the employer's lawful authority. Thank you. I'll do my best. Mr. Bakhtari. May it please the Court, good afternoon. Bob Bakhtari for the defendant Applee Peoria Public School District, Board of Education thereof. Your Honors, under PETA and PSEBA, an employer has to have lawful authority to employ a law enforcement officer. My client is a school district, a school board, the governing entity of the school district. School board is a creature of the statute, specifically in this case the school code. School code authorizes the school district to do many things in furtherance of students' education. What it does not authorize is for our district or any other school district in the state of Illinois to hire or employ a law enforcement officer. There has to be some enabling statute somewhere in Illinois law that authorizes the governing entity of primary and secondary schools to hire its own law enforcement officer or police officer. That doesn't exist. Plaintiff has pointed to the truancy statute, which is found in the school code at section 26-5. The truancy provision doesn't authorize the school district to hire anything other than a truancy officer. And the provision specifically says that in the course of his or her duties as a truancy officer, the truancy person may investigate truancy, enforce the truancy provisions and the compulsory attendance provisions of the school code, and in that capacity may be a conservator of the peace and so on. So the conservator of the peace language and the following language is confined and necessarily limited by the preceding clause, which is in the course of that person's duty as a truancy officer. And if you look at the school code following the truancy officer provision in 26-5, it goes on to talk about what those duties look like. And so, for instance, you have truancy officer has to send written notice to a student's guardian if the student has not been in school. Then the school can follow up by taking administrative action to perform an administrative hearing with the school board to determine whether or not the student is a truant. And then from that point on, there are certain civil actions that can be pursued by the district to enforce these compulsory attendance laws. In contrast, a law enforcement officer can arrest and detain and take offenders to prison or before a magistrate, as the case may be, without following any type of procedure if they detect a crime. And a law enforcement officer is authorized to enforce and prevent crimes wherever they may occur, within his or her municipality, within his or her jurisdiction. That's not consistent at all with the duties of a truant officer. And so when you look at the provision of the Police Training Act, which defines law enforcement officers, it speaks very broadly of someone who is authorized to enforce the criminal code, to prevent crime, investigate crime, enforce the highway laws, enforce the traffic laws. That's not at all consistent with what a truant officer's duties are. Well, let me ask you, because I can't hold a job. I used to be a policeman. And what about the language that they also shall, in the exercise of their duties, referring to the truancy officer, shall in the exercise of their duties be conservators of the peace, and shall keep the same suppressed riots, routes of fray, fighting, breaches of the peace, and prevent crime, and may arrest offenders on view, and cause them to be brought before proper officials for trial or examination? That language is all modified by the key critical language, shall, in the exercise of their duties. So everything subsequent to that Well, a police officer, like I said, I know a little bit about police officers. It's been a long time. Police officers shall do those things also in the exercise of their duties. When he's off duty, I didn't let the city burn down. It didn't matter to me. I was off duty, and I was staying out there. But when you're on duty, in the exercise of your duties, you've got to do those things. Right. And here, the exercise of the truant officer's duties are just to investigate truancy and enforce the school code's provision on truancy and compulsory school attendance. So nowhere in the school code does the legislature grant to the school district or the truant officer broader law enforcement authorization that would be required if a school had law enforcement power or power to So what are we to make of this? You know, suppressing riots, violence, fighting, prevent crime in general, and arrest offenders on view. In the course of the truant officer's duties, if he or she encounters breaches of the peace, if he encounters a student who is chronically truant, he may carry out these provisions, but only within the scope of his or her authority as a truant officer, not beyond that. What would be beyond that? I'm just trying to figure out what would fall outside of that. Sure. So if you look to the Police Training Act and the definition of law enforcement officer that is defined in that statute, it talks about a law enforcement officer having general crime prevention duties, general obligations to investigate and deter crime. But just so we're clear, this thing says shall in the exercise of their duties prevent crime. Correct. And so that's the key. That shows that in their duties as a truancy officer, which includes only investigating truancy and enforcing the attendance provisions of the school code, may they carry out these functions. So truant officers don't have the authority to, say, make an arrest for a violation of the general criminal law. They don't have the power to go out and patrol the highways and the streets and make a drug arrest or arrest for a traffic light violation. Those are the types of functions that are consistent with a law enforcement officer as it's envisioned by the Police Training Act. Can a truancy officer arrest somebody for receiving unpunishable drugs on school property? Well, I don't want to draw too strict of boundary around what a truancy officer may or may not encounter in the performance of those duties. I think what is clear is that in order to be considered a law enforcement officer or to have law enforcement power, the state of Illinois supported colleges or universities, like the University of Illinois or Northern Illinois University, those enabling statutes very clearly grant the authority to the university or to the college to employ peace officers. And they very clearly say, as a peace officer, this person has the authority, similar to municipal police officers or similar to peace officers, to describe in the manner as the language is in the truancy provision. Also, the fact that this provision is located in the school code and is part of the school board's mandate and mission, which is education, is also inconsistent with the idea that a school district has the authority to hire a full-blown law enforcement officer. That's correct, but a community college or a university, which is not as confined. It doesn't involve students who are of a younger age who are still developing emotionally and maturely. The legislature has seen fit to authorize colleges and universities to have their own police forces. And if you look at the PETA statute, it specifically references state-supported colleges and universities as one of the categories of employer that is specifically enumerated as a qualifying employer with power to hire the types of employees to whom PETA benefits apply. And so that's a notable choice made by the legislature. Nowhere did they include in the PETA statute Illinois school districts are the type of employer to whom PETA applies. Nowhere in the Police Training Act does it mention that a secondary school or primary school or a school district is the type of organization to which the Police Training Act applies. It does specifically mention, again, colleges and universities. So there's a consistency there as to what's included and what's excluded. And you just don't see any reference to the type of statutory authority that would be required for a school district to have its own police force or its own law enforcement officers. And this case is very similar, Your Honors, to the People v. Ringland decision. In that case, the state's attorney for LaSalle County took its special investigative assistance and sent them out on Highway 80 and told them to go interdict drug crime and make them perform law enforcement functions. And in that case, this court, as well as our Supreme Court, looked at the statutory authority that existed that could possibly enable the special investigative assistance to go out and perform these law enforcement functions. And it didn't exist. And this court and also the Supreme Court basically said, you cannot take the limited statutory basis that is serving subpoenas, serving process, and assisting state's attorneys and extrapolate from that this full-blown law enforcement authority. And it's very similar to what's at issue in this case. We can't take the truancy provision and extrapolate from that some type of further broad law enforcement mandate such as the type that colleges and universities have and apply it to a school district. Otherwise we'd have, I think there's over 600 school districts in this state. We could potentially have 600 police forces operated by 600 different school boards. Doesn't make any sense. It's an absurd result. The legislature, had they wanted to intend school districts to have the authority to maintain their own law enforcement officers, would have said so. But it's not in the school code and it's not in any other provision that we've been able to locate. Gibbs is a case mentioned by counsel for the proposition that in that case the court simply looked at the functions being performed by the employee who was the sheriff's deputy who was assigned to a correctional facility. But that's not just what the court looked at in Gibbs. Gibbs examined the historical statutory and common law basis of a sheriff and his deputies and what those sources of authority were. And from that concluded that sheriffs traditionally and their deputies were law enforcement officers because they could perform law enforcement functions. The mere fact that a deputy was assigned to a correctional facility did not deprive the law enforcement authority that the sheriff and the deputies otherwise had. That's what Gibbs stands for and I think it's notably... Was he assigned there or was he moonlighting there? I don't recall, your honor. It may have been the latter. Well, if it's the latter, your opposing counsel suggests that this, my clients are also police officers in certain jurisdictions and the fact that he's a police officer. Well, he has to be employed. The statutes require that he be employed as a police officer by the employer against whom the benefits are being sought. That's impeda and deceiva. So the fact that a claimed beneficiary has other law enforcement employment is irrelevant. It has to be that the actual beneficiary is employed as a law enforcement officer. We don't believe that deceiva has any lower standard or lower threshold for determining whether Mr. Steinling was a law enforcement officer or employed by public school district number 150. The language in deceiva indicates that the employer against whom the benefits are being sought must be an employer who employs law enforcement officers. And that follows after another list of enumerated types of employees to whom the statute applies. So there's things like correctional officers, etc., and then it goes on to have the catch-all and law enforcement officers and firefighters. We think the only reasonable reading of deceiva is that it involves an employer who already has the legal authority to employ and hire law enforcement officers. And again, you have the problem otherwise. There's the absurd result in which an employer who employs someone who happens to perform some type of function in that manner all of a sudden could be subject to a statute that the employer didn't even know applied to them. And interestingly, the state agency required to maintain records of deceiva claims and benefits being paid has no record of any Illinois school district ever being subject to the deceiva act. And with respect to deceiva and also I believe PETA, our Supreme Court has said there's a strict rule of construction. In other words, these and in the NOAC versus City of Country Club Hills case, the Supreme Court said under this statute, and it was deceiva, but I also believe this applies to PETA, you must construe the statute strictly against the intended beneficiary, not against the entity from which the claimant is seeking benefits. Claimant is seeking to turn that rule on its head and apply it the other way around. But under the NOAC decision, these types of statutes have to be construed strictly in favor of the public entity and to do so and assume that an employer could employ a law enforcement officer without any enabling statute simply turns that rule of construction on its head. If there are no other questions, I'll just conclude with the final point. Your Honor, as counsel mentioned that the mere fact that Mr. Steinle was certified to receive police training confers, somehow confers law enforcement authority, somehow makes the school district an employer who can employ law enforcement officers. That's incorrect. The authority has to come from some statute, some authority granted by the state. Police power is an awesome power. It's one of the most significant powers that the state possesses. The state doesn't confer that power lightly. It doesn't confer that power ambiguously. The legislature knows how to grant police power if it so chooses and to whom to do so. Thank you very much. Thank you, Mr. Bakhtiari. Mr. Boyle, some rebuttal. Counsel for defendants use the term boundary when answering your question about the truancy law, the duties in the truancy law. Boundary is actually the right term. Counsel tried to describe the limitation on a truant officer's scope of authority in terms of the truancy law. I tried to say it's a legal boundary. It's not. The duties of truant officers, and this is truant officers that are being employed by the county or the district, it's geographic. It's very geographic. And the terms, the language that counsel was arguing limited the scope of a truant officer's duties in terms of law rather than geography states as follows. The county truant officer within the county and the district truant officers within their respective districts shall in the exercise of their duties be limited. It's plainly a geographic limitation. All of the other language that's in there that sounds pretty much like a traditional law enforcement officer, truant officers have that by statute. That's what the statute says. They can't operate that, for example, I don't know how the bailiff's jurisdiction works, but she probably can't go out on the street and run radar. Her duties are probably limited to the courthouse. And the same would be true of a truant officer. They have those duties to stop fighting, keep the peace, prevent crime, arrest offenders on view, but they don't have them outside the boundaries of the school district. So it's definitely a geographic boundary and not a limitation on their authority to only do those things in the pursuit of truancy laws. I have a question. Was it a requirement of his employment as a truancy officer that he obtain PTI, physical training, attend the physical training institute? I want to be specific about that. It was a requirement of his employment that he obtain PTI. I don't know if I can tell you for sure it was a requirement of his truancy officer to obtain PTI because he was hired as a law enforcement officer. The district has at various times described these same people as truant officers, law enforcement officers, school resource officers, and security guards. He was hired as a police officer and had to go to PTI. Did he carry a whip? Yes. How was he dressed? He was dressed as a police officer. Finally, just to be clear, the plaintiff is not asking this court to declare that school districts can operate police forces. That's not the issue before the court. This is just about whether the plaintiff is a law enforcement officer for purposes of the PETA and the PSEBA and we believe that he is. Thank you. Well, thank you both for your arguments this afternoon. The matter will be taken under advisement and as I said, Judge Olrich will be participating at his position and will be issued. We'll have a brief recess for a panel change for the next case.